IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JAMES ALLEN DANIELS,             )
                                 )
              Plaintiff,         )
                                 )
                                 )  Case No. CIV-18-270-RAW-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
              Defendant.         )

**REPORT AND RECOMMENDATION**

Plaintiff James Allen Daniels (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. § 404.1520.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. § 404.1521. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 51 years old at the time of the ALJ's decision. He has a high school education and worked in the past as a horse trailer assembler, recreational vehicle repairer, and ordered tractor parts. Claimant alleges an inability to work beginning on August 19, 2014, due to limitations resulting from back injury, arthritis, hypertension, diabetes, nerve damage, ankle damage, skin condition, and depression.

### Procedural History

On August 7, 2015, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's

3

application was denied initially and upon reconsideration. On March 29, 2017, Administrative Law Judge("ALJ") Anne H. Pate conducted a video hearing from Dallas, Texas, and Claimant appeared in Paris, Texas.   On August 17, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on June 14, 2018, it denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly consider the opinion of his treating physician Dr. Monica Woodall, D.O.; (2) failing to properly consider his obesity; and (3) making improper findings at steps four and five of the sequential evaluation.

### Evaluation of Opinion Evidence

In her decision, the ALJ found Claimant suffered from severe impairments of diabetes mellitus, hypertension, neuropathy, arthritis, and obesity. (Tr. 12).  She determined Claimant could perform light work, including lifting and carrying twenty pounds

4

occasionally and ten pounds frequently and sitting, standing, and walking six hours each out of an eight-hour workday. (Tr. 18).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of ticket seller, small products assembler, and electronics assembler, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 22). As a result, the ALJ concluded that Claimant was not under a disability from August 19, 2014, his amended alleged onset date, through December 31, 2015, the date last insured. (Tr. 22).

Claimant contends the ALJ improperly considered the opinions from his treating physician, Dr. Woodall, who provided care to Claimant at the Great Physician's Pharmacy and Clinic. The ALJ summarized the treatment records from Dr. Woodall, dating from June of 2013 through March of 2017. Although Dr. Woodall appears to have treated Claimant for his diabetes and associated symptoms, she also diagnosed him with arthritis, hyperlipidemia, hypertension, edema, and dyspnea. She also suspected that Claimant suffered from chronic obstructive pulmonary disorder ("COPD"). (Tr. 13-16, 385-425, 440-44, 459-74, 476-79).

The ALJ further referenced Dr. Woodall's medical source statement from March 31, 2017, based upon Claimant's diabetes. Dr. Woodall indicated she had been treating Claimant since 2014 for uncontrolled diabetes. She identified several symptoms from

5

which Claimant suffered and listed clinical findings of peripheral neuropathy and low back pain. She noted his blood pressure medication made him drowsy and his pain medication made him dizzy.

Dr. Woodall determined Claimant's impairments were expected to last at least twelve months and his physical condition was affected by depression. She stated Claimant could only walk 100 yards without rest or severe pain, could stand for five minutes at one time and sit for 30 minutes at one time before needing to move into another position. In an eight-hour workday, Dr. Woodall determined Claimant could stand/walk less than two hours total and could sit for about two hours total. Claimant needed to shift between positions at will but did not need to walk around during an eight-hour workday. Claimant needed to take unscheduled breaks every 15 minutes for approximately 10-15 minutes. His legs needed to be elevated at least chest high for at least two hours during the workday. Claimant did not need an assistive device. Dr. Woodall concluded that Claimant could rarely lift and carry less than ten pounds and could never lift and carry more than ten pounds. He could never twist, bend, crouch, and climb ladders or stairs. Claimant could only use his hands/fingers/arms for any type of activity (grasping, manipulating, reaching) from 1-10 percent of the workday. His environmental restrictions included no restrictions to cigarette smoke and perfumes, but Claimant was to avoid exposure to extreme cold, avoid even moderate exposure to

6

soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals, and avoid all exposure to extreme heat, high humidity, and wetness.

Dr. Woodall further determined that she expected Claimant to be "off task" 25 percent or more during a workday and believed he was incapable of performing even "low stress" work. His impairments were likely to produce "good days" and "bad days," and she estimated Claimant's impairments or treatment would result in his being absent from work more than four days per month. She concluded Claimant's impairments were "reasonably consistent" with the symptoms and functional limitations included in the statement, and she listed additional impairments/limitations that could affect Claimant's ability to work, including difficulty hearing, severe shortness of breath with minimal exertion, and her suspicion that Claimant may have congestive heart failure and COPD. (Tr. 20, 487-90).

An ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). An ALJ must provide specific, legitimate reasons for

rejecting any such opinion, and must give consideration to several factors in weighing a medical opinion. *Id*. "What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* 20 C.F.R. § 404.1527(c)(2).

The ALJ assigned "no significant weight" to the opinions expressed by Dr. Woodall on the medical source statement.  The ALJ noted that "there is nothing in the medical evidence to support the degree of limitation assessed by Dr. Woodall.  Instead, her assessment appears based on the [C]laimant's subjective complaints."  She then discussed examination findings from the consultative examiner and ultimately assigned "great weight" to the opinions of the non-examining physicians.  (Tr. 20-21).

Although the ALJ noted an inconsistency between the medical evidence in the record and the opinions reached by Dr. Woodall on the medical source statement, the ALJ appears to have primarily rejected Dr. Woodall's opinions in favor of the non-examining physicians' opinions, because the ALJ viewed Dr. Woodall's opinions as being based upon Claimant's subjective complaints. This was not a proper basis upon which to reject Dr. Woodall's opinions. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir.

8

2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.'  The ALJ had no legal nor evidentiary basis for either of these findings.  Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy."), quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252-53 (10th Cir. 2002).

On remand, the ALJ should re-evaluate Dr. Woodall's opinions in accordance with the pertinent factors for weighing medical opinions.  She should then provide legitimate reasons for the weight she assigns to Dr. Woodall's opinions.

### Consideration of Obesity

Claimant also contends that the ALJ determined his obesity was a severe impairment, but she then ignored Social Security Ruling 02-01p and failed to include any functional limitations related to obesity in the RFC.  Social Security Ruling 02-1p requires an ALJ consider that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately" when assessing the RFC.  Soc. Sec. Rul. 02-1p, 2000 WL 628049, *1 (Sept. 12, 2002).  "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id*. at *6.  Thus, "assumptions about the severity or

9

functional effects of obesity combined with other impairments [will not be made]." *Id*.

The ALJ did not ignore Claimant's obesity in her decision. She noted Claimant was sixty-eight inches tall and weighed over 300 pounds, which calculated to a body mass index in the obese category. She determined Claimant's obesity was a severe impairment. The ALJ specifically referenced SSR 02-1p, stating she was required to consider the effects of Claimant's obesity when determining his RFC. She noted the ruling's discussion that obesity could have an adverse impact on other impairments. The ALJ specifically stated in the decision that she "considered the [C]laimant's obesity and the combined effect of all impairments at all steps of the sequential evaluation of disability pursuant to SSR 02-1p." (Tr. 16).

Moreover, Claimant has not cited to any other evidence indicating other areas impacted by his obesity. *Id*. ("Claimant does not discuss or cite to medical evidence about other areas which were impacted by her obesity."). Thus, this is sufficient to establish that Claimant's obesity was considered with his other impairments in the RFC.

### Step Four Determination

Claimant also argues the ALJ erred when determining whether Claimant could perform past relevant work. In the decision, the ALJ stated in the paragraph six heading that Claimant could not

10

perform any past relevant work. In her discussion, however, the ALJ noted the VE's testimony that Claimant "could possibly" perform his past relevant work ordering tractor parts. (Tr. 21). To the extent there is any inconsistency, it is a harmless one as the ALJ made a step-five finding that there was work existing in the national economy in significant numbers which Claimant could perform, *i.e.*, the jobs of ticket seller, small products assembler, and electronics assembler. *See Jones v. Berryhill*, 720 Fed. Appx. 457, 459 (10th Cir. 2017) ("We conclude that any error in the ALJ's step-four finding was harmless given the ALJ's alternative finding at step five that Jones could work as a dishwasher.").

In any event, after the ALJ re-evaluates Dr. Woodall's opinions, the ALJ may need to make a new step-four determination as to whether Claimant can perform his past relevant work.

### Step Five Determination

Claimant further asserts the ALJ's step-five determination that Claimant can perform the jobs of ticket seller, small product assembler, and electronics assembler is improper because she failed to include all of Claimant's limitations in the RFC. Specifically, Claimant contends the hypothetical question posed by the ALJ to the VE did not account for his diabetes or neuropathy, high blood pressure, fatigue, leg swelling, or obesity. He also

contends the ALJ failed to account for his need to change positions during the workday when questioning the VE.[2]

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

The Court is remanding the case for the ALJ to re-evaluate Dr. Woodall's opinions. Once the ALJ has done so, she may be required to reassess Claimant's RFC and then further modify the hypothetical questioning of the VE to accommodate any changes.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

---

[2]     Claimant's initial briefing cites to certain jobs and limitations that have no relation to this case. In his reply brief, Claimant concedes his step-five argument in this regard.

applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of December, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE